**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

PAUL WANCO,

               **Plaintiff,**

v.

THE TOWNSHIP OF ROCHELLE
PARK, THE TOWNSHIP MANAGER OF
THE TOWNSHIP OF ROCHELLE
PARK, TOWNSHIP COMMITTEE OF
THE TOWNSHIP OF ROCHELLE
PARK, ROCHELLE PARK
VOLUNTEER FIRE DEPARTMENT,
DAVID BROWN, Fire Chief, MICHAEL
STEARNS, Assistant Chief, PETER
DONATELLO JR., PETER
DONATELLO III, AND JOHN AND
JANE DOES 1–15,

               **Defendants.**

Civ. No. 14-7413 (KM) (JBC)

**OPINION**

<u>KEVIN MCNULTY, U.S.D.J.:</u>

## I.    INTRODUCTION

This case arises from the removal of the plaintiff, Paul Wanco,[1] from his position as a volunteer firefighter in Rochelle Park, New Jersey. The removal followed Wanco's plea of guilty to a criminal charge, bias intimidation in violation of N.J. Stat. Ann. § 2C:16-1A. Wanco brought this action against the Township of Rochelle Park; Rochelle Park's manager, township committee, and volunteer fire department; and fire chief David Brown, assistant chief Michael Stearns, Peter Donatello Jr., and Peter Donatello III. Wanco asserts claims for

---

[1] References to "Wanco" mean the plaintiff, Paul Wanco. Other members of his family are identified by their first names.

wrongful discharge in violation of public policy (Count 1); breach of contract and the implied covenant of good faith and fair dealing (Count 2); defamation (Count 3); violation of 42 U.S.C. § 1983 and N.J. Stat. Ann. § 10:6-1 *et seq.* through the deprivation of his due process and equal protection rights (Counts 4, 5, and 6); and abuse of process (Count 7). (Compl. ¶¶ 23–55)[2] Now before the Court is Defendants' motion for summary judgment as to all counts, pursuant to Fed. R. Civ. P. 56.

---

[2]  Record items cited repeatedly will be abbreviated as follows:

| | |
|---|---|
| "Compl." = | Complaint (ECF no. 1) |
| "Def. Mot." = | Brief in Support of Defendants' Motion for Summary Judgment (ECF no. 38-1) |
| "Def. Facts" = | Statement of Material Facts (ECF no. 38-3) |
| "Pl. Opp." = | February 7, 2017 Letter to Judge McNulty (ECF no. 39) |
| "Def. Reply" = | Defendants' Letter Reply Brief (ECF no. 40) |

## II.     BACKGROUND

### A. Relevant Facts[3]

Paul Wanco is employed as the Fire Marshal in the Borough of Lodi, a position he has held for approximately 13 years. (Def. Facts ¶ 3) (To be clear, that Lodi position is not at issue here.) In or around May 2012, Wanco also joined the Rochelle Park Volunteer Fire Department (the "Fire Department") as a volunteer firefighter. (*Id.* ¶ 1) Wanco "received no compensation for his participation with the [Rochelle Park] Volunteer Fire Department." (*Id.* ¶ 2) One of the requirements of the Volunteer Fire Department is that a member "shall be of good moral character and shall not have been convicted of a crime involving moral turpitude which would, in the judgment of the Township Committee, be prejudicial to the morals of the Fire Department." (*Id.*) (citing Rochelle Park Code § 14-6(A)(5))

---

[3]     Defendants submitted a Statement of Material Facts, to which Wanco has not responded. Defendants ask that the Court consider the facts in its statement to be admitted for the purpose of summary judgment (Def. Reply 2), in accordance with Local Civil Rule 56.1(a) which states:

> The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion; any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion.

*Id.* A failure to dispute a party's statement of material facts, however, "is not alone a sufficient basis for the entry of a summary judgment." *See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990) (holding that even where a local rule deeming unopposed motions to be conceded, the court was still required to analyze the movant's summary judgment motion under the standard prescribed by Fed. R. Civ. P. 56(e)); *see also Muskett v. Certegy Check Servs., Inc.*, Civ. No. 08-3975, 2010 WL 2710555 (D.N.J. July 6, 2010) ("In order to grant Defendant's unopposed motion for summary judgment, where, as here, 'the moving party does not have the burden of proof on the relevant issues, . . . the [Court] must determine that the deficiencies in [Plaintiff's] evidence designated in or in connection with the motion entitle the [Defendants] to judgment as a matter of law.'" (quoting *Anchorage Assocs.*, 922 F.2d at 175)). I have therefore reviewed Wanco's Complaint and letter briefs with an eye to assertions of fact that may be supported by the evidence of record.

During the relevant period, Wanco lived with his wife and two children on the first floor of a two-family home in Lodi. The home was owned by his 89-year-old mother, Florence Wanco ("Florence"). (Def. Facts. ¶ 4) Florence, together with Wanco's 18-year-old niece, Jennifer Wanco ("Jennifer"), lived on the second floor. (*Id.*)

On the afternoon of March 4, 2013, Jennifer telephoned Wanco to inform him that Florence had fallen and that Jennifer required assistance in picking her up off the floor. (*Id.* ¶¶ 7–8) Wanco responded that he was busy and unavailable to help. (*Id.* ¶ 7) After work in Lodi, Wanco went to the firehouse and did not return home until midnight. He did not check on his mother that night or the following day. (*Id.* ¶¶ 9–10) At his deposition, Wanco testified that "I just totally forgot about it and I never got another call from Jennifer." (*Id.* ¶ 9)

The next day, on the afternoon of March 5, 2013, Jennifer called for medical assistance. (*Id.* ¶ 11) A Lodi ambulance responded. A police officer who arrived at the scene at the same time reported:

> [W]e were met by a strong odor of feces and urine. We also observed, what it appeared to be, stains of fecal matter in the area of where the victim was laying with flies circling around in the living room area. The stench was so overwhelming that I was forced to make periodic trips outside to get some fresh air.

(Def. Mot. Ex. E) At some point, Hackensack paramedics arrived and began to aid Florence. Wanco arrived on the scene around the same time as the paramedics. Overhearing a conversation between Wanco and Jennifer, a police officer deduced that Florence had fallen in the early afternoon on March 4 and had been left lying "on the filthy hardwood floor all night until [Jennifer] finally contact[ed] the police" on the afternoon of March 5. (*Id.*)

The living conditions in the apartment were such that the medics commented that "it is not healthy or safe for a human to live under those circumstances." Further, "[i]t appeared the victim had been neglected for a long period of time and [the medics] intended to report it to social services upon arriving [at] the hospital." (Def. Facts ¶ 13; Ex. E)

4

On July 16, 2013, Wanco and Jennifer were indicted for Elder Abuse and Aggravated Assault. (Def. Facts ¶ 18) Wanco advised the Fire Department of his arrest. (*Id.* ¶ 19) In Wanco's words, the news "also made the papers very quickly, so everyone was aware of it." (*Id.*; citing Def. Mot. Ex. D 30:19–20)

Nearly one year later, on June 3, 2014, Wanco pled guilty to the lesser charge of bias intimidation, N.J. Stat. Ann. § 2C:16-1A. During his plea allocution, Wanco made the following statement under oath:

> I reside on the first floor [of a two family home in] Lodi, New Jersey with my wife and two children. My late mother Florence lived on the second floor apartment with my brother who is now deceased and his daughter Jennifer. On March 4, 2013 I was working as I do everyday. I am an employee of the Borough of Lodi as fire marshal, code enforcement officer. On March 4, 2013, I received a phone call from Jennifer Wanco advising me that my mother Florence had fallen. Jennifer claims she tried to call me two other times. My mother was eighty-eight years of age. I knew that she needed help but I refused to assist her because I was working. I realize that she might suffer additional injuries if I didn't help. I found out later that she suffered injuries from the fall and that she probably suffered additional injuries because she was lying there for so many hours because I did not help her. My mother was a burden due to her disabilities and old age. I did not want her bothering me at work and I wanted to intimidate her so that she would stay out of my business and leave me alone. I knew she was old and infirm but I wanted to send her a message that I was not at her beck and call even if she was old and disabled. I think she got the message because she remained on the floor of the apartment for a long time and told Jennifer that she didn't want her to call me for help. And I'm sorry for what happened but we had a difficult relationship. And when she became old and feeble she needed to be taught that I was not going to run for any reason she asked. After these events we made some peace with each other.

(*Id.* ¶ 21; citing Def. Mot. Ex. H)

On June 3, 2014, the Cliffview Pilot published an unflattering, three-page article titled, "Lodi fire marshal avoids prison, keeps pension in admitting abuse of elderly mother." (Def. Facts ¶ 24) The article quoted the majority of Wanco's plea allocution. (*Id.*) Similar articles appeared in other publications, including The Record of Bergen County. (*Id.* ¶ 26)

5

On June 9, 2014, Wanco met with Chief David Brown and other Fire Department officials. During the meeting, Chief Brown addressed Wanco's recent conviction and informed him that as a result of his guilty plea, Wanco was disqualified from service as a volunteer member of the Fire Department. During their conversation, Chief Brown stated that he was not comfortable with Wanco dealing with senior citizens. (*Id.* ¶ 44) Chief Brown afforded Wanco the opportunity to resign, and Wanco stated that he would speak to his attorney. At that point, Chief Brown relieved Wanco of his duties as a volunteer firefighter. (*Id.* ¶ 27; Def. Mot. Ex. J) Also on June 9, 2014, Chief Brown advised the Fire Commissioner of Wanco's removal in writing. (Def. Facts ¶ 28; Def. Mot. Ex. K)

In a letter to Rochelle Park's attorney, dated June 11, 2014, Wanco's attorney, Frank Cozzarelli, requested that Wanco be reinstated to his volunteer position. Cozzarelli alleged that Wanco's removal was improper and requested that the Fire Department consider the letter both as a challenge to Wanco's removal and as an "appeal from Chief Brown's determination to the Police Department Criminal Background and Check Appeal Panel." (Def. Facts ¶ 29) On July 18, 2014, Rochelle Park's attorney responded, advising that he would not comment on the merits of the removal because of the possibility that it would be reviewed by the Township Committee. (*Id.* ¶ 30)

Cozzarelli responded that Wanco was not aware of the reason for his removal until he received the July 18, 2014 letter. (*Id.* ¶ 31) This was seemingly incorrect; at the time of his removal on June 9, 2014, Wanco had been advised of the reason. (*Id.*) Rochelle Park has an appeals procedure for disciplinary actions, and on July 31, 2014, Rochelle Park's attorney advised Cozzarelli to review it. (*Id.* ¶ 32) On August 4, 2014, Cozzarelli requested a copy of the disciplinary charges and evidence that Chief Brown had complied with Rochelle Park Code § 14-22(B)(1). (*Id.* ¶ 33)

On August 8, 2014, Wanco was sentenced for the bias intimidation offense to which he had pled guilty. (Def. Mot. Ex. T) In entering into the plea,

Wanco had requested that his plea have no effect on his position as a Fire Marshal in the Borough of Lodi (again, a different position from the Rochelle Park volunteer fire fighter position at issue here). (Def. Facts ¶ 40) Wanco had previously executed a Plea Form stating that: (1) "The Prosecutor will request a waiver of Disqualification from Public Employment under 2C: 51-2 and I will be allowed to continue to work as a Fire Marshal and Fire Code Enforcement Official in the discretion of the appointing authority. This conviction will not be a disqualifying offense."; and (2) "The Prosecutor will stipulate that the offense to which I am pleading does not involve dishonest[l]y and does not touch and/or concern my office, position, or employment." (Def. Facts ¶ 42)[4] Cozzarelli explained to the Superior Court at Wanco's sentencing that he "would like to continue to do that which is why we presented your Honor with the supplement to the judgment which declares he's not barred from holding his position as a fire marshal," i.e., the Lodi position. (Id. Ex. T 3:11–14) In sentencing Wanco, the Superior Court adhered to the terms of the Plea. (Id. ¶ 43)

As noted above, Cozzarelli had complained, at least informally, about alleged procedural irregularities in connection with the Rochelle Park dismissal. On August 20, 2014, "in light of the procedural discrepancies between the parties," Rochelle Park advised Cozzarelli that it would "restart the disciplinary process in order to cure all perceived procedural defects." (Id. ¶ 34) On September 25, 2014, Wanco was served with a Statement of Charges. There were two: 1) "Conviction of an offense punishable under the laws or statutes of the United States, the State of New Jersey or Municipal Ordinances"; and 2) "Conduct unbecoming a member of the Rochelle Park Volunteer Fire Department." The Statement of Charges concluded, "Firefighter Paul Wanco, therefore, charged with conduct unbecoming a firefighter, conviction of a crime involving moral turpitude which would be prejudicial to the morals of the Fire

---

[4]    Ex. U, the plea form, is omitted from Defendants' papers. There seems to be no dispute about its contents, however.

Department and was convicted of a crime which violated the laws of the State of New Jersey." (*Id.* ¶ 35; Def. Mot. Ex. R) Wanco testified that he received the Statement of Charges several days after September 25, 2014. (*Id.* ¶ 36)

On October 3, 2014, Cozzarelli responded that the Statement of Charges was improper and demanded that the charges be withdrawn. Chief Brown, he said, "did not bring any charges and failed in every respect to follow the protocols that you claim to be following at this juncture." Cozzarelli did not appeal the decision or request a hearing, however. In particular, he failed to take advantage of the appeals process under Rochelle Park Code § 14-22(C), (D). (*Id.* ¶ 38) At his deposition, Wanco testified that he was unaware that his attorney had failed to request a hearing. (Def. Mot. Ex. D 98:15–19)

### B. Procedural History

On November 28, 2014, Wanco, through Cozzarelli, filed his Complaint with this Court. On July 19, 2016, Cozzarelli informed the Court that he had been disbarred and was no longer representing Wanco. (ECF no. 25) No substitute attorney has appeared on Wanco's behalf. On January 27, 2017, Defendants moved for summary judgment pursuant to Fed. R. Civ. P. 56. That motion is now before the Court.

### III.    SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 248, 106 S. Ct. 2505 (1986); *Kreschollek v. S. Stevedoring Co.,* 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny Pennsylvania,* 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S. Ct. 2548 (1986). "[W]ith respect to an issue on which the nonmoving

party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

A *pro se* litigant is ordinarily entitled to considerable leeway. *See Niblack v. Murray*, No. CV126910MASTJB, 2016 WL 4086775, at *1 n.1 (D.N.J. July 29, 2016) (citing *Pratt v. Port Auth. of N. Y. & N.J.*, 563 F. App'x 132, 134 (3d Cir. 2014) ("[B]ecause [the plaintiff] is proceeding pro se, we will construe his brief liberally."); *Marcinek v. Comm'r*, 467 F. App'x 153, 154 (3d Cir. 2012) (holding that courts are "under an obligation to liberally construe the submissions of a pro se litigant")). *See generally Haines v. Kerner*, 404 U.S. 519

(1972).

This is an unusual case. On November 28, 2014, the date Wanco filed the Complaint, he was represented by counsel, Frank J. Cozzarelli. He continued to be represented by Cozzarelli for over one-and-a-half years until Cozzarelli was disbarred. (*See* July 19, 2016 Letter from Frank Cozzarelli, ECF no. 25) Cozzarelli's withdrawal preceded Defendants' summary judgment motion. Wanco has proceeded pro se, and states that he attempted to obtain counsel, but no attorney would take his case at this late stage. (Pl. Opp. 1) Therefore, although Wanco was represented by counsel for much of this case, I have construed Wanco's Complaint and his opposition to the summary judgment motion in the liberal spirit of *Haines*.

## IV.    DISCUSSION AND ANALYSIS

### 1.    Wrongful Discharge in Violation of Public Policy (Count 1)

In Count 1, Wanco alleges that he was wrongfully discharged from his volunteer fire fighter position in violation of public policy. (Compl. ¶ 25) In *Pierce v. Ortho Pharmaceutical Corp.*, the New Jersey Supreme Court recognized that "an employee has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy." 84 N.J. 58, 417 A.2d 505, 512 (1980). However, in *Versarge v. Township of Clinton*, a case brought by a volunteer firefighter, the court observed that "New Jersey courts have not expanded this principle to include expulsion from volunteer organizations." Civ. No. 90–257(CSF), 1991 WL 247611, at *11 (D.N.J. Nov. 18, 1991), *aff'd,* 984 F.2d 1359, 1371 (3d Cir. 1993). The parties have not pointed to, and this Court is not aware of, any intervening New Jersey cases expanding this public-policy cause of action to a plaintiff removed from a volunteer position.[5]

---

[5]    There are other problems with Wanco's wrongful discharge claim.

First, claims of wrongful discharge in violation of public policy generally relate to the *reason* for the discharge, not to the employer's adherence to discharge procedures. The doctrine was not developed to require procedural protections; such

Accordingly, I will grant summary judgment in favor of Defendants on Count 1.

### 2.    Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing (Count 2)

In Count 2, Wanco asserts a claim for breach of the implied covenant of good faith and fair dealing against defendants. (Compl. ¶ 30) This count may also be liberally construed to assert a claim for breach of contract. Either way, Wanco fails to demonstrate a genuine issue for trial on any contract-based claim.

To state a claim for breach of contract, a plaintiff "must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing there from; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot,* 507 F.3d 188, 203 (3d Cir. 2007). "In order for a valid contract to exist, Plaintiff must show mutual assent, consideration, legality of the object of the contract, capacity of the parties and form[ality] of memorialization." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 421 F. Supp. 2d 831, 833 (D.N.J. 2006) (citing *Cohn v. Fisher*, 118 N.J. Super. 286, 291, 287 A.2d 222 (1972)).

Wanco has failed to point to any evidence that a valid contract existed. His Complaint alleges in conclusory terms that "[t]here is a contractual

---

procedural requirements have their origin elsewhere, in due process, statutory, and regulatory law. Rather, the tort was developed to fill a gap in the law by prohibiting the discharge of nominally at-will employees for reasons that violate public policy. *See Pierce*, 84 N.J. at 73, 417 A.2d at 512 ("Employees will be secure in knowing that their jobs are safe if they exercise their rights in accordance with a clear mandate of public policy. On the other hand, employers will know that unless they act contrary to public policy, they may discharge employees at will for any reason.") Thus the doctrine is best viewed as a limitation on the rule that employment in New Jersey is at-will unless the parties contract otherwise.

Second, "more is needed than simply the breach of public policy affecting a single person's rights to constitute the breach of a 'clear mandate' of public policy that *Pierce* requires." *Hennessey v. Coastal Eagle Point Oil Co.*, 129 N.J. 81, 99, 609 A.2d 11, 19–20 (1992). Wanco, however, alleges procedural violations as to himself only.

relationship between the plaintiff and defendants as relating to plaintiff's position as a volunteer fireman." (Compl. ¶ 30) That, however, is a bare allegation. Wanco provides no evidence of any memorialized contract between himself and the Fire Department.[6] Nor has he specified the substance of any alleged agreement, whether written or oral.

"There is no universally-accepted test for establishing a breach of the duty of good faith and fair dealing, but two elements appear to recur with some frequency: (1) the defendant acts in bad faith or with a malicious motive, (2) to deny the plaintiff some benefit of the bargain originally intended by the parties, even if that benefit was not an express provision of the contract." *Yapak, LLC v. Massachusetts Bay Ins. Co.*, No. CIV. 3:09-CV-3370, 2009 WL 3366464, at *2 (D.N.J. Oct. 16, 2009) (citing *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 182 N.J. 210, 225, 864 A.2d 387 (2005); *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 251, 773 A.2d 1121 (2001)). The baseline principle, however, is that the implied covenant is a term *of a contract*: "in the absence of a contract, there can be no breach of an implied covenant of good faith and fair dealing." *Noye v. Hoffmann-La Roche Inc.*, 238 N.J. Super. 430,

---

[6]    Wanco has not asserted a *Woolley* claim. At any rate, any claim that the ordinances of the Rochelle Park Code constitute an implied contract, would fail as a matter of law.

True, an agreement restricting an employer's freedom to terminate an at-will employee "can be implied from a widely distributed employment manual that articulates terms and conditions of employment, including grounds and procedures for termination." *Russelman v. ExxonMobil Corp.*, No. CIV. 12-752 RBK/AMD, 2012 WL 3038589, at *5 (D.N.J. July 25, 2012) (citing *id.* at 553). A claim for breach of such an agreement is known as a *Woolley* claim, after the New Jersey Supreme Court case that recognized it, *Woolley v. Hoffmann-La Roche, Inc.*, 99 N.J. 284, 491 A.2d 1257 (1985).

Unlike handbooks distributed by an employer to its employees, municipal ordinances establishing disciplinary procedures do not imply any "contractual right to membership." *See Peters v. Silverton Volunteer Fire Co. No. 1*, No. A-3498-14T1, 2016 WL 6518595, at *5 (N.J. Super. Ct. App. Div. Nov. 3, 2016) ("Although the bylaws included procedures for accepting and expelling members, those provisions did not create a contractual right to membership."). Further, even assuming *arguendo* that a particular municipal ordinance is functionally similar to procedural protections in an employee handbook, New Jersey courts have not expanded the application of *Woolley* claims to include the removal of a volunteer from his or her position.

433, 570 A.2d 12, 14 (App. Div. 1990). Because there is no evidence that there was a contract at all, Wanco's claim for a breach of the implied covenant of good faith and fair dealing necessarily fails.

Accordingly, I will grant summary judgment in favor of Defendants on Count 2.

### 3.    Due Process (Counts 4, 5, and 6)[7]

In Counts 4, 5, and 6, Wanco asserts a Section 1983 claim alleging that Defendants violated his rights under the Due Process clause of the Fourteenth Amendment to the United States Constitution.[8] He similarly asserts an NJCRA claim, alleging violations of his due process rights under the New Jersey Constitution.[9] Wanco argues that he had a property interest in his position as a volunteer firefighter, and that he was denied substantive and procedural due

---

[7]    I treat Count 3 (defamation) out of order, together with the other state law tort claim, Count 7 (abuse of process), in section IV.5, below.

[8]    Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Thus, to sufficiently set forth a Section 1983 claim, a complaint must allege the violation of a right secured by the Constitution or laws of the United States, and that the alleged violation was committed by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250 (1988).

[9]    Or so it would appear. Although the Complaint is not explicit, I will assume that Wanco intended to bring a parallel claim under the New Jersey Civil Rights Act (the "NJCRA"), N.J. Stat. Ann. § 10:6-1 *et seq*. The NJCRA "was modeled after 42 U.S.C. § 1983, and creates a private cause of action for violations of civil rights secured under the New Jersey Constitutions." *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011). It makes little difference, however. "This district has repeatedly interpreted NJCRA analogously to § 1983." *Id*

process because he was removed from his position arbitrarily, capriciously, and without pre-deprivation notice and hearing.[10]

"[T]he requirements of due process do not apply when the property interest involved is 'de minimis.'" *Id.* (citing *Goss v. Lopez,* 419 U.S. 565, 576, 95 S. Ct. 729, 736 (1975)). In a case similar to Wanco's, the Third Circuit has held that any benefit a volunteer firefighter obtained through his position was "de minimis" for these purposes. *Versarge v. Twp. of Clinton N.J.*, 984 F.2d 1359, 1370 (3d Cir. 1993). *See also Peters v. Silverton Volunteer Fire Co. No. 1,* No. A-3498-14T1, 2016 WL 6518595, at *5 (N.J. Super. Ct. App. Div. Nov. 3, 2016) ("[T]he benefits afforded to plaintiff as a volunteer firefighter did not rise to the level of property protected by constitutional due process."). Although Wanco alleges a deprivation of property rights, the record on summary judgment does not support a finding that he had any more than a de minimis property right in his volunteer firefighter position.[11] Accordingly, Wanco's

---

[10]    In Count 4 Wanco alleges that:

> Defendants . . . abused authority by summarily removing the plaintiff from the premises without the benefit of having charges pr[o]ferred against him or the ability to defend those charges. . . . . [T]he defendants . . . exercised their authority . . . for the purpose of depriving the Plaintiff his . . . right to continue as a member of the Volunteer Fire Department. The continued and ongoing deprivation of the right to participate in the activities of the defendant Volunteer Fire Department is and continues to be a depr[i]vation of liberty and property rights without due process of law as guaranteed by the Fourteenth Amendment of the United States Constitution and the New Jersey Constitution.

(Compl. ¶ 42) In Count 5 he further alleges that he "has been deprived of his property, civil liberties and civil rights by the arbitrary, capricious, and unreasonable actions of Defendants under color of state law in violation of 42 U.S.C. [§] 1983." (Compl. ¶ 44) Similarly, in Count 6:

> The removal of the Plaintiff from his position without a hearing or other process of any sort is based upon an arbitrary, capricious and unreasonable classification without a rational basis in law or in fact.

(*Id.* ¶ 48)

[11]    In *Versarge*, the plaintiff claimed that his voluntary position carried protectable ancillary benefits: "(1) training; (2) workers' compensation; and (3) access to the firehouse as a social area." *Versarge*, 984 F.2d at 1370. These were held insufficient.

volunteer position was not entitled to substantive or constitutional due process protections.[12] *See id.*

---

In *Houston v. Randolph,* 934 F. Supp. 2d 711, 734 (D.N.J. 2013), *aff'd,* 559 F. App'x 139 (3d Cir. 2014), I applied *Versage* and held that a volunteer firefighter trainer position did not rise to the level of a protected property interest merely because it involved certain ancillary benefits, such as accumulated points that could lead to incentive payments. Here, Wanco alleges less; he received no compensation for his role as a volunteer firefighter (Def. Facts ¶ 2), and he specifies no other ancillary benefit of that position.

[12]    Wanco also alleges that:

> Defendants failed to abide the adjudication of the Superior Court of New Jersey [that the conviction of the criminal offense to which the plaintiff pled guilty would not and does not disqualify the plaintiff from holding the position [of Firefighter First Class] and unilaterally acted to deprive[] the plaintiff of his position as a Firefighter First Class."

(Compl. ¶ 48; *see also* Pl. Opp. 1) Setting aside the irrelevance of these allegations to a Due Process claim, they are not borne out by the evidence as to this volunteer fire fighter position in Rochelle Park.

> Under N.J. Stat. Ann § 2C:51-2(a),
>
> A person holding any public office, position, or employment, elective or appointive, under the government of this State or any agency or political subdivision thereof, who is convicted of an offense shall forfeit such office, position or employment if:
>
> > (1) He is convicted under the laws of this State of an offense involving dishonesty or of a crime of the third degree or above or under the laws of another state or of the United States of an offense or a crime which, if committed in this State, would be such an offense or crime;
> >
> > (2) He is convicted of an offense involving or touching such office, position or employment; or
> >
> > (3) The Constitution so provides.

*Id.* As part of Wanco's plea, the prosecutor sought and obtained a waiver of this provision with respect to position in Lodi as a Fire Marshal and Fire Code Enforcement Official, but not with respect to his position in Rochelle Park as a volunteer firefighter. (*See* Def. Facts ¶¶ 40–43; Def. Mot. Ex. D 65 – 69; Ex. T, 3:11–14) This could not have been an oversight, or a failure to predict a problem in Rochelle Park. The sentencing took place in August, and Wanco had already been removed from his Rochelle Park volunteer firefighter position in June.

Further, even if the waiver of § 2C:51-2 had also focused on his volunteer position, Wanco would be mistaken in interpreting a waiver of a statute *requiring* forfeiture of a position as a *prohibition* against disciplinary action, including removal, in connection with the guilty plea.

15

Additionally, to the extent Wanco alleges that Defendants unconstitutionally infringed on his liberty and property interests in his personal reputation, he has failed to demonstrate a genuine issue of material fact. As the Third Circuit has held, "Stigma to reputation alone, absent some accompanying deprivation of present or future employment, is not a liberty interest protected by the fourteenth amendment." *Versarge*, 984 F.2d at 1371 (quoting *Robb v. City of Phila.*, 733 F.2d 286, 294 (3d Cir. 1984)). Here, Wanco has not alleged or put forth evidence of any deprivation of present or future employment as a result of his removal from his volunteer firefighter position.

On Counts 4, 5, and 6, to the extent they allege a deprivation of due process, summary judgment is awarded to defendants.

### 4.    Equal Protection (Counts 4, 5, and 6)

The Complaint repeatedly asserts that Defendants violated Wanco's right to the "equal protection of the law." (*See* Compl. ¶¶ 12, 15–18, 21–22, 41) I therefore interpret Counts 4, 5, and 6 as having an equal protection component. However, Wanco's invocation of the Equal Protection Clause of the Fourteenth Amendment or the parallel protections of the New Jersey Constitution is in vain.

The Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "Article I, paragraph 1 of the New Jersey Constitution has been interpreted 'as conferring the right of equal treatment under the law, a right analogous to the guarantee of equal protection under the Fourteenth Amendment.'" *In re D'Aconti*, 316 N.J. Super. 1, 19, 719 A.2d 652, 660, 1998 WL 735897 (App. Div. 1998) (citing *Doe v. Poritz*, 142 *N.J.* 1, 43, 662 *A.*2d 367 (1995)).

To state a traditional equal protection claim, a plaintiff must allege facts showing the existence of purposeful discrimination. *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 196 (3d Cir. 2009) (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990)). The

plaintiff must have received treatment different from that received by other individuals similarly situated. *Id.*

Most commonly, a plaintiff will allege that a state actor intentionally discriminated because of his or her membership in a protected class, such as a racial or religious minority. *Lande v. City of Bethlehem,* 457 F. App'x 188, 192 (3d Cir. 2012) (citing *Chambers,* 587 F.3d at 196). Wanco never alleges membership in a protected class.

Alternatively, however, a plaintiff may assert an Equal Protection claim under a "class of one" theory. *Lanin v. Borough of Tenafly*, No. 2:12-02725 KM MCA, 2014 WL 31350, at *8 (D.N.J. Jan. 2, 2014).

> A "class of one" Equal Protection claim asserts that a person was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L.Ed.2d 1060 (2000). The plaintiff must allege: "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown,* 455 F.3d 225, 239 (3d Cir. 2006).

*Id.* at *7; *see also Ecotone Farm LLC v. Ward*, 639 F. App'x 118, 124 (3d Cir. 2016) (non-precedential).

However, "the class-of-one theory of equal protection has no application in the public employment context." *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 607, 128 S. Ct. 2146, 2156 (2008). That is so because "federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies." *Id.* at 609 (citing *Bishop v. Wood*, 426 U.S. 341, 394, 96 S. Ct. 2074, 2080 (1976)). District Judge Vazquez has held that that principle applies *a fortiori* to a volunteer position; like him, I "can find no sound reason why the holding in *Engquist* would not apply with equal force to public volunteers. Indeed, employees who are compensated for their work would seem to be entitled to greater protections than unpaid volunteers, who receive only ancillary benefits and no monetary compensation." *O'Toole v. Klingen*, No. CV 14-6333, 2017 WL 132840, at *10 (D.N.J. Jan. 13, 2017)

17

(Vazquez, J.). *See also Houston v. Randolph,* 934 F. Supp. 2d 711, 736–37 (D.N.J. 2013) (McNulty, J.), *aff'd,* 559 F. App'x 139 (3d Cir. 2014) (declining to apply class-of-one theory in the context of alleged discrimination in connection with volunteer firefighter trainer position).

"Public employees typically have a variety of protections from just the sort of personnel actions about which [Wanco] complains, but the Equal Protection Clause is not one of them." *Engquist*, 553 U.S. at 609. Accordingly, Wanco's claim of Equal Protection violations cannot survive summary judgment.

### 5.    Defamation and Abuse of Process (Counts 3 and 7)

Wanco also asserts two state law tort claims: defamation and abuse of process. Both fail because Wanco did not conform to the procedural requirement of the New Jersey Tort Claims Act. In the alternative, each fails to state a claim.

### a.    New Jersey Tort Claims Act Notice Requirement

Under the New Jersey Tort Claims Act ("NJTCA"), a plaintiff in a tort action against a public entity or public employee must provide notice of his claim no later than ninety days after the claim has accrued. N.J. Stat. Ann. § 59:8–8 ("A claim relating to a cause of action for . . . injury or damage to person or to property shall be presented . . . not later than the 90th day after accrual of the cause of action."); *see also Carmichael v. Pennsauken Township. Bd. of Ed.,* 462 F. Supp. 2d 601, 616 (D.N.J. 2006) (stating that the notice requirement applies to "public employee[s]"). This notice requirement applies to all common law tort actions, including actions for defamation and for abuse of process. *See Velez v. City of Jersey City,* 180 N.J. 284, 296, 850 A.2d 1238 (2004) (finding "no justification" for the notion that NJTCA's notice requirement did not apply to all "common law tort claims" against public employees liable under the Act); *Michaels v. State of N.J.*, 955 F. Supp. 315, 329 (D.N.J. 1996) (inter alia, dismissing abuse of process claim for failure to comply with NJTCA's notice requirement); *May v. Borough of Pine Hill*, 755 F. Supp. 2d 623, 630

(D.N.J. 2010) (dismissing defamation claim for failure to comply with NJTCA's notice requirement). Where a plaintiff fails to provide notice, the suit will be dismissed. *See Lassoff v. New Jersey,* 414 F. Supp. 2d 483, 489 (D.N.J. 2006).

Defendants are all public entities or public employees within the meaning of the NJTCA. *See Peters v. Silverton Volunteer Fire Co. No. 1,* No. A-3498-14T1, 2016 WL 6518595, at *6 (N.J. Super. Ct. App. Div. Nov. 3, 2016) ("The [NJ]TCA applies to volunteer emergency service providers, such as the Fire Company.") (citing *Pallister v. Spotswood First Aid Squad,* 355 N.J. Super. 278, 281–82 (App. Div. 2002)). The individual defendants are either the Township Manager or members of the Fire Department and acted in that capacity.

Wanco does not allege that he complied with the NJTCA's notice requirement. Reviewing the record, I find no evidence that any of Defendants ever received such notice. *See Epstein v. State,* 311 N.J. Super. 350, 355–56, 709 A.2d 1353 (App. Div.), *cert. denied,* 155 N.J. 589, 715 A.2d 992 (1998) (barring claims for, inter alia, malicious prosecution based on plaintiff's failure to file timely notice of claim with local public entity). In fact, the NJTCA requires that a tort plaintiff wait "six months from the date notice of claim is received," before filing suit in court. N.J. Stat. Ann. § 59:8–8. Wanco filed suit in November 2014, within six months after his removal from the Fire Department in June 2014, and less than two months after Wanco's counsel threatened suit in October.[13]

---

[13]    In a letter dated October 3, 2014, Wanco's erstwhile counsel, Frank Cozzarelli, threatened that the Fire Department's failure to withdraw charges and reinstate Wanco within 48 hours would result in a section 1983 civil rights lawsuit against "all officers, directors, trustees, and agents of the Town and the Volunteer Fire Department." (Def. Mot. Ex. S) Among other deficiencies, the letter does not fully or substantially comply with the NJTCA notice because it mentions only a constitutional civil rights suit but fails to provide notice of defamation, abuse of process, or indeed any state law tort. In short, the demand letter provides no notice of a tort claim.

Wanco's state law tort claims against Defendants cannot succeed because Wanco failed to comply with the notice requirements of the NJTCA. Accordingly, I will grant summary judgment for Defendants on Counts 3 and 7.

In addition, however, and in the alternative, Wanco's defamation and abuse of process claims are substantively deficient, as explained in the following subsections (b) and (c).

### b.    Defamation (Count 3)

Wanco's Complaint alleges defamation in that Defendants "have claimed and asserted that the plaintiff pled guilty to a crime of moral turpitude." (Compl. ¶ 36) However, when asked at his deposition about his defamation claim, he focused instead on the statement by Chief Brown that he was uncomfortable with Wanco dealing with senior citizens. (Def. Ex. D, 125:3–9) As a matter of law, neither statement will support a defamation claim.

In order to state a claim for defamation under New Jersey law, "a plaintiff must show that the defendant (1) made a false and defamatory statement concerning the plaintiff, (2) communicated the statement to a third party, and (3) had a sufficient degree of fault." *Mangan v. Corp. Synergies Grp., Inc.,* 834 F. Supp. 2d 199, 204 (D.N.J. 2011).

The first element, whether a statement is defamatory, requires an analysis of "(1) the content, (2) the verifiability, and (3) the context" of the statement. *Leang v. Jersey City Bd. Of Educ.,* 969 A.2d 1097, 1113 (N.J. 2009). Factual statements are those capable of verification, *i.e.,* subject to proof of truth or falsity in relation to external realities; pure opinion statements are not capable of such verification because they reflect only one's state of mind. *See Ward v. Zelikovsky,* 643 A.2d 972, 979 (N.J. 1994). New Jersey also recognizes a distinction "between genuinely defamatory communications as opposed to obscenities, vulgarities, insults, epithets, name-calling, and other verbal abuse." *Id.* Only where the allegedly defamatory statements imply reasonably specific assertions of fact will the claim be allowed to proceed. *See id.*

20

The second element, communication to a third party, is self-explanatory in most cases.

The third element of defamation is a sufficient degree of fault. Defamation requires a showing of actual malice where the victim is a public figure, and negligence where the victim is a private figure. *See New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80 (1964); *Costello v. Ocean Cnty. Observer,* 643 A.2d 1012, 1021 (N.J. 1994).

Additionally, "New Jersey courts 'have long recognized the existence of a qualified privilege that confers immunity upon a public official for defamation uttered in relation to matters committed by law to his control or supervision.'" *Andros v. Gross,* No. CIV. 03-1775 (JBS), 2005 WL 3500058, at *9 n.19 (D.N.J. Dec. 21, 2005), *aff'd in part,* 294 F. App'x 731 (3d Cir. 2008) (citing *Brayshaw v. Gelber,* 232 N.J. Super. 99, 112 (App. Div. 1989); N.J. Stat. Ann. § 59:3-10 ("A public employee acting in the scope of his employment is not liable for an injury caused by his misrepresentation.")). That immunity is lost only if "the defamation is made with actual malice in the *New York Times v. Sullivan* [cited *supra*] sense: 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Burke v. Deiner,* 97 N.J. 465, 475 (1984) (internal citations omitted).

### i. Moral Turpitude Charge

Chief Brown's written Statement of Charges dated September 25, 2014, states, inter alia, that Wanco is "charged with . . . conviction of a crime involving moral turpitude which would be prejudicial to the morals of the Fire Department." (Def. Mot. Ex. R) Wanco's claim for defamation based on this statement fails for many reasons.

First, Wanco has failed to demonstrate a genuine issue of fact as to whether Chief Brown issued that charge with actual malice. The actual malice standard applies here, perhaps because Wanco was a public figure, but certainly because the utterance was made in relation to Fire Department

21

disciplinary procedures, a "matter committed by law to [Chief Brown's] control or supervision."

Of course, it is uncontested that Wanco was convicted and sentenced for the crime of bias intimidation; the issue here is whether Brown defamed him by referring to the crime as one of moral turpitude. There is no evidence that Chief Brown acted with actual malice in making that statement.

"Moral turpitude" itself is a difficult term to define:

> [Moral turpitude] has been defined as an "act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow men, to society in general, contrary to the accepted and customary rule of right and duty between man and man,' . . . and as, 'in its legal sense * * * everything done contrary to justice, honesty, modesty, or good morals.' . . . But the attempt to apply these definitions to specific criminal acts, especially in the context of license revocation proceedings, has demonstrated only the elasticity of the phrase and its necessarily adaptive character, reflective at all times of the common moral sense prevailing throughout the community.

*In re License of Fanelli*, 174 N.J. 165, 176, 803 A.2d 1146, 1153 (2002) (citing *State Bd. of Med. Examiners v. Weiner*, 68 N.J. Super. 468, 483, 172 A.2d 661, 669 (App. Div. 1961)). Chief Brown could reasonably have thought that Wanco's offense fit the bill. The offenses with which Wanco was originally charged, Elder Abuse and Aggravated Assault, even on their face, fit within the flexible definition of moral turpitude. True, the charge to which Wanco pled guilty, bias intimidation, is a lesser offense. Assuming the case is doubtful, a court might look past the elements of the offense to the facts of the case.[14] On

---

[14]   I acknowledge that Wanco testified at his deposition that he had reservations about the content of his plea allocution but was advised by his attorney that it "had to be read the way it was written." (Def. Mot. D 56:8–22) Additionally, when asked whether he could understand why someone would think that the "things that you testified with [in] your statement at the plea hearing" were "a bad thing," Wanco answered, "Nope, because I know the truth behind it." (*Id.* 91:9–13)

However, aside from the fact that Wanco's plea allocution was made under oath, it is not this Court's task in this case to determine what in fact Wanco knew or did regarding his mother's fall in March 2013. What is before this Court is Wanco's claim that Chief Brown defamed him. The success of that claim depends, inter alia, on

these facts, there is little doubt that Chief Brown could have legitimately considered this offense one of moral turpitude. Irrespective of whether a New Jersey court would ultimately agree with Chief Brown, there is no evidence that Chief Brown knew or recklessly disregarded the possibility that Wanco's conviction for bias intimidation did not involve moral turpitude. The offense, as narrated in Wanco's plea allocution, and subsequently reported by the press— was "contrary to . . . good morals" and otherwise met the elastic definition of moral turpitude. Wanco has presented no evidence to indicate otherwise. Therefore, Wanco is unable to prove the requisite amount of fault to meet the third element of a defamation claim, or to overcome the public-function privilege.

Second, for many of the same reasons, the statement cannot really be regarded as defamatory at all. It is not "false." There is no doubt that Wanco pled guilty to this offense, and "moral turpitude" seems at best to be an opinion or judgment call.[15]

### ii. Discomfort about Wanco's Dealing with Senior Citizens

At his deposition, Wanco focused on Chief Brown's statement that he was uncomfortable with Wanco dealing with senior citizens. (Def. Ex. D, 125:3–9) That statement does not constitute defamation.

First, Chief Brown's statement is one of pure opinion not capable of verification because it reflects only Chief Brown's state of mind, and is

---

Chief Brown's state of mind when he made his statement, which was undoubtedly informed by news reports of Wanco's plea allocution. The "truth behind" the allocution is irrelevant, unless Wanco can demonstrate that Chief Brown knew that the contents of the allocution were false or recklessly disregarded its veracity.

[15]    These grounds are sufficient, but I also note that the evidence is equivocal as to whether Chief Brown's statement was communicated to a third party. The Complaint alleges in conclusory fashion that the "statements were communicated publicly and to third parties." (Compl. ¶ 37) But there is no specific evidence that the statement was communicated to anyone other than Mr. Wanco himself, when he was served with the Statement of Charges. (Def. Facts ¶¶ 35–36)

23

therefore not defamatory. It is similar to other statements of opinion that have been found not actionable under New Jersey defamation law, such as a statement that a person "was dishonest and lacking in integrity," *Gulrajaney v. Petricha,* 381 N.J. Super. 241, 885 A.2d 496, 503–504 (N.J. Super. Ct. App. Div. 2005), or that someone "was a bad guy" and that his "word was not good," *Beverly Hills Motoring, Inc. v. Morici*, No. CIV. 14-756 FSH, 2015 WL 248352, at *5 (D.N.J. Jan. 20, 2015). We might consider that the statement, although expressed as an opinion, contained an implied assertion of fact: that Wanco had behaved inappropriately in relation to a senior citizen. But clearly, and admittedly, he had; he admitted as much under oath when he pled guilty.

Second, for similar reasons to those expressed with regard to the actual malice standard and the moral turpitude charge, there is no evidence that Chief Brown made the statement about his discomfort with Wanco dealing with senior citizens with actual malice.

In short, Wanco failed to comply with the procedures of the NJTCA, but even if he had, his Count 3 claim of defamation would not survive summary judgment.

### c.    Abuse of Process (Count 7)

A claim of abuse of process alleges "the misuse or misapplication of the legal procedure in a manner not contemplated by law." *Simone v. Golden Nugget Hotel and Casino*, 844 F.2d 1031, 1036 (3d Cir. 1988). To prove abuse of process, the plaintiff must establish both "an ulterior motive and some further act after the issuance of process representing the perversion of the legitimate use of the process." *Id.* at 1036–37 (3d Cir. 1988) (internal citations omitted).

Here, Wanco fails to identify any such ulterior motive.[16] He alleges that "defendants conspired to abuse the process utilized to remove the plaintiff from

---

[16]    "Process" usually refers to a court's processes. I assume without deciding that "process" for purposes of the abuse of process tort may encompass the Fire Department's disciplinary process.

his position as a Firefighter First Class." (Compl. ¶ 54) The claim undoes itself: the *legitimate* purpose of the process that Defendants used was to take disciplinary action, including removal where appropriate. This was not a perversion of the process, but rather its legitimate and intended purpose.[17]

Here, too, Wanco failed to comply with the procedures of the NJTCA, but even if he had, his Count 7 abuse of process claim would not survive summary judgment.


## V.    CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is GRANTED as to all counts. An appropriate order follows.


Dated: July 24, 2017


_____
HON. KEVIN MCNULTY, U.S.D.J.

---

[17]    To the extent that Wanco is alleging that the procedures themselves were flawed, I incorporate the discussion of his due process claims in Section IV.3, *supra*.